**L. O. CROSBY, Jr., et ux., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**L. O. CROSBY, III, Individually and as Sole Beneficiary of the L. O. Crosby, III Trust, and Robert T. McRaney, as Co-Trustee of the L. O. Crosby, III Trust, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Stewart GAMMILL, III & Lynn Crosby Gammill, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. Nos. 3448–3450.**

United States District Court
S. D. Mississippi, S. D.

Aug. 21, 1968.

Paul Newton, Gulfport, Miss., Bruce Aultman, Hattiesburg, Miss., for plaintiffs.

Robert Hauberg, U. S. Atty., Jackson, Miss., Stennis Little, Jr., Dept. of Justice, Washington, D. C., for defendant.

WILLIAM HAROLD COX, Chief Judge.

These three suits were tried together before the Court without the intervention of a jury for the recovery of income taxes by the respective plaintiffs for the years 1961, 1962 and 1963. The taxes for said years were paid by the taxpayers and involved the sale of timber (growing and to be grown) on 139,-616 acres of land in Mississippi and Louisiana on Tracts 1, 2 and 3.

The taxpayers had substantially identical leases to St. Regis Paper Company on such lands and valid contracts with said corporation wherein the taxpayers agreed to sell and the corporation agreed to buy all specified timber at a fixed price in a stated quantity each year during the life of the contracts. These leases and purchase agreements are very lengthy and extremely complicated. The taxpayers computed their taxes for said years and treated such payments under said timber purchase contracts as entitled to capital gain treatment. The Internal Revenue Service viewed such income as ordinary income and back assessed the taxpayers for such taxes computed as ordinary income. Said taxes with interest were paid by the taxpayers. They followed all statutory procedures requisite in paying and in seeking a refund of such taxes, which was duly denied by the Internal Revenue Service, and this suit therefor ensued.

Significantly, the agreement to sell and buy this timber did not obligate the buyer to cut and remove any quantity of timber as a condition precedent to the right of the seller to receive fixed periodic payments for fixed quantities of timber at a fixed price. The question is thus posed under such facts as to whether or not the taxpayers under the provisions of such sales agreements retained an "economic interest" in such timber to entitle them to capital gain treatment under § 631(b).[1] It is not disputed that each of the taxpayers held such timber for more than six months prior to the execution of such leases and sales agreements. The undisputed evidence in the case shows that the taxpayers paid such back assessment of taxes, applied for a refund thereof and that such refund in each instance was denied; consequently, that this Court has full jurisdiction of the parties and the subject matter of this litigation.

■ Under pertinent treasury regulations [2] it is provided that an "economic interest" in the timber must be retained by the taxpayer to entitle him to depletion deductions on standing timber. It is the law in this Circuit that the taxpayer under such a sales contract must be paid for such timber solely from the proceeds of the natural resource itself.[3] Under the contract before the Court in this case, the revenues derived therefrom by the taxpayer are not in any wise or to any extent contingent upon the severance of the timber, and such funds are not derived solely from the proceeds of the sales of such timber. The amounts paid by St. Regis to the taxpayers are fixed and absolute and without regard to whether or not a single tree is cut or sold. St. Regis acquires the right to

1. 26 U.S.C. (1964 ed.) § 631(b): Gain or loss in the case of timber, coal, or domestic iron ore. Disposal of timber with a retained economic interest.—In the case of the disposal of timber held for more than 6 months before such disposal, by the owner thereof under any form or type of contract by virtue of which such owner retains an economic interest in such timber, the difference between the amount realized from the disposal of such timber and the adjusted depletion basis thereof, shall be considered as though it were a gain or loss, as the case may be, on the sale of such timber. In determining the gross income, the adjusted gross income, or the taxable income of the lessee, the deductions allowable with respect to rents and royalties shall be determined without regard to the provisions of this subsection. The date of disposal of such timber shall be deemed to be the date such timber is cut, but if payment is made to the owner under the contract before such timber is cut the owner may elect to treat the date of such payment as the date of disposal of such timber. For purposes of this subsection, the term "owner" means any person who owns an interest in such timber including a sublessor and a holder of a contract to cut timber.

2. Section 1.611–1(b) Treasury Regulations as to "economic interest" under Income Tax Law: (1) Annual depletion deductions are allowed only to the owner of an economic interest in mineral deposits or standing timber. An economic interest is possessed in every case in which the taxpayer has acquired by investment any interest in mineral in place or standing timber and secures, by any form of legal relationship, income derived from the extraction of the mineral or severance of the timber, to which he must look for a return of his capital. But a person who has no capital investment in the mineral deposit or standing timber does not possess an economic interest merely because through a contractual relation he possess a mere economic or pecuniary advantage derived from production. For example, an agreement between the owner of an economic interest and another entitling the latter to purchase or process the product upon production or entitling the latter to compensation for extraction or cutting does not convey a depletable economic interest. Further, depletion deductions with respect to an economic interest of a corporation are allowed to the corporation and not to its shareholders.

3. In Dyal v. United States, (5 CA) 342 F.2d 248, the Court held: "It is essential that the consideration for the transaction, whether payable in cash or in kind, be contingent upon the severance of the timber, and be payable to the owner *solely* out of the proceeds from the natural resource itself."

cut certain quantities of timber and such cutting of timber may be deferred and may accumulate, but can be cut only on the terms and conditions of the contract. All such timber not cut and removed remains the property of the taxpayer upon the expiration or termination of the contract. The income derived by these taxpayers under these contracts with St. Regis did not solely result or accrue from a sale of timber. This income resulted from fixed payments required under these contracts to be made by St. Regis without regard to any timber cut from such lands. The phrase "economic interest" is treated by the courts as words of art which have come to have an established tax meaning.[4] The income in suit of these taxpayers simply was not derived solely from a sale of such natural resources. That is to say, the evidence in this case does not show that these taxpayers' interest in this estate was in any wise depleted within the purview of this statute by a sale of said timber from said lands in that the contracts did not require such monies to come solely and exclusively from such source. That is an indispensable prerequisite under the law to the right of a taxpayer to claim the benefit of the capital gains provisions of § 631 (b).

■ It is accordingly the view of this Court on the first point that the taxpayers' claim is without merit and will be denied.

■ The alternative question presented by the taxpayers to the Court is as to whether or not the timber of these taxpayers could qualify as capital assets.[5] Tract No. 1 of this timber was owned by L. O. Crosby, Jr., who is a successful timber man with a lifetime spent in the business. It surely may not be gainsaid that he was in the timber business and that he sold timber as a primary part of his general business. The evidence does not show that his timber

---

4. The nature or form of legal relationship which vests a taxpayer as an investor with an economic interest in standing timber is immaterial and unimportant. Parsons et al. v. Smith, Collector of Internal Revenue, 359 U.S. 215, 79 S.Ct. 656, 662, 3 L.Ed.2d 747 holds: "An economic interest is possessed in every case in which the taxpayer has acquired, by investment, any interest in mineral in place or standing timber and secures, by any form of legal relationship, income derived from the severance and sale of the mineral or timber, to which he must look for a return of his capital. But a person who has no capital investment in the mineral deposit or standing timber does not possess an economic interest merely because, through a contractual relation to the owner he possesses a mere economic advantage derived from production * * *. Such are the interests that are permitted a deduction for depletion by the statutes as consistently interpreted by this Court and by the Commissioner."

In Scofield, Collector of Internal Revenue v. LaGloria Oil & Gas Co., (5 CA) 268 F.2d 699 in speaking of the factors indispensable to established economic interest holds: "The second factor has been interpreted to mean that the taxpayer must look solely to the extraction of oil or gas for a return of his capital, and depletion has been denied where the pay-ments were not dependent on production, Helvering v. Elbe Oil Land Development Co., 303 U.S. 372, 58 S.Ct. 621, 82 L.Ed. 904, or where payments might have been made from a sale of any part of the fee interest as well as from production. Anderson v. Helvering, 310 U.S. 404, 60 S. Ct. 952, 84 L.Ed. 1277."

It must be borne in mind in considering this question that this scheme in its entirety, designed by the Congress to encourage a timber grower to deplete his capital investment and to make at least partial restitution therefor, is entirely a matter of legislative grace. Food Machinery & Chemical Corporation v. United States, 348 F.2d 921, 172 Ct.Cl. 313.

5. Was the timber of these taxpayers in these three suits to be properly characterized as capital assets? 26 U.S.C. (1964 ed.) § 1221 provides: "For purposes of this subtitle, the term 'capital asset' means property held by the taxpayer (whether or not connected with his trade or business), but does not include—(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."

qualified as a capital asset under § 1221 and escaped the exclusionary provision of the section relating to property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

■ Cases Numbers 3449 and 3450 present a more difficult and somewhat different business situation, varying largely in degree of activity. These cases relate to Tracts No. 2 and No. 3. At the outset, it may not be doubted on the facts and under the circumstances in this case that these tracts of timber were acquired from this family-owned corporation for the single purpose of sale and lease under these contracts in suit to St. Regis. These two cases present a very close and very troublesome issue as to whether or not the timber on these lands in the hands of these taxpayers can and does escape the exclusionary provision of § 1221(1), supra. Under all of the facts, circumstances and inferences in this case it has not been shown to the reasonable satisfaction of the Court that these tracts were acquired for investment and not primarily for sale to customers in the ordinary course of business. These members of this family were surely not as active in the timber business as was Mr. L. O. Crosby, Jr. and their timber was handled on a much more restricted basis of activity. But these taxpayers in Cases Number 3449 and Number 3450 are not shown to have acquired this timber for any other purpose than for sale to St. Regis. For another reason, these taxpayers in Cases Number 3449 and Number 3450 simply cannot escape a proper and just application of the doctrine of consistency. When their 1959 income tax returns were previewed to determine whether or not they acquired any timber on Tract 2 and Tract 3 and, if so, to tax them on any excess of value over price paid therefor, that they represented that such timber was negligible and had no substantial value.[6] The Internal Revenue Service accepted such representation of material fact as it must be and is presumed as a matter of law that such information was not falsified in contravention of federal statute. The taxpayers will not be heard now to say when the statute of limitation has run against any right of the Internal Revenue Service to assay the facts and assess any justly due tax that such information was and is false.[7] A tax advantage simply may not be enjoyed by a taxpayer taking inconsistent positions to earn it.

■ These taxpayers have thus paid large sums as taxes on income derived from the sale of timber on these lands. Such payments of taxes were thoroughly inconsistent with and diametrically opposed to information given this Revenue Officer in the course of his performance of his official duties, and where the taxpayers are obliged to say that such information was false and in violation of federal statutes. The taxpayers will not be heard in this Court to make any such contention or recover thereon.

■ These statutes conferring preferred treatment upon taxpayers in furtherance of a wholesome Congressional policy must receive a strict construction, and cannot be expanded by any indulgent

6. Mr. L. O. Crosby, Jr. advised the investigator of the Internal Revenue Service in charge of checking the tax consequences of the sale of this timber by this family-owned corporation to these members of the family that there was no timber of any value on these lands when sold to these taxpayers. They thereby escaped a tax at the time on any value of such timber in excess of the price paid therefor and the statute of limitations has now run. Mr. Crosby, as spokesman for all of the taxpayers, contended that the merchantable timber was reserved to the corporation and that no timber or pulpwood remained on the land or passed to the taxpayers. He testified that such timber thus acquired by the taxpayers could not have been sold for a penny.

7. Hancock Bank v. United States, D.C., 254 F.Supp. 206; Wichita Coca Cola Bottling Co. v. United States, (5 CA) 152 F.2d 6, cert. denied 327 U.S. 806, 66 S. Ct. 964, 90 L.Ed. 1031; Johnson v. Commissioner of Internal Revenue, (5 CA) 162 F.2d 844.

consideration of facts and circumstances in the record before the Court. These taxpayers have thus not shown this Court by the greater weight of the more convincing evidence that they have a tenable claim against the United States on either the original claim under § 631 (b) or the alternative claim under § 1221.

The complaint in its entirety is without merit and will be dismissed with prejudice at plaintiffs' cost. A separate order in each case to such effect may be presented.