W. Harley HUXFORD and Rae Huxford, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 1361.

United States District Court
N. D. Florida,
Tallahassee Division.

May 7, 1969.

W. A. Gartner, of Culverhouse, Tomlinson, Taylor & DeCarion, Jacksonville, Fla., for plaintiffs.

Roger Moore, Atty., Tax Division, Dept. of Justice, Washington, D. C., Clinton Ashmore, U. S. Atty., Northern District of Fla., Tallahassee, Fla., for defendant.

## MEMORANDUM-DECISION

CARSWELL, Chief Judge.

This is a portion of an income tax refund case which comes before the Court without the intervention of a jury. The

narrow issue presented here is one of law which involves no dispute as to facts. The Court is simply called upon to interpret the contract at issue. The sole issue to be decided at this time, is whether J. O. Huxford Estate, Inc., (Huxford), retained an economic interest in timber sold to Buckeye Cellulose Corporation (Buckeye) under an agreement dated December 12, 1960, thus qualifying the profits it realized thereunder for capital gain treatment pursuant to Sections 631(b) and 1231 of the Internal Revenue Code of 1954.

The taxpayers are stockholders of the incorporated Estate (Huxford) which is a Subchapter S, Small Business Corporation whose income is taxed directly to the stockholders. The Estate owns the tracts of land described in the contract.

Paragraph 2 of the contract provides:

Buckeye covenants and agrees to pay Huxford a total purchase price of $2,200,000 for the present standing timber plus fifty per cent of all stumpage money realized from Buckeye from the use or resale of hardwood and cypress timber.

This paragraph further provides for a payment by Buckeye to Huxford of $10,000 on the execution date of the contract and two payments of $50,000.00 each on March 15 and September 15, 1961. "Thereafter Buckeye will pay Huxford $110,000.00 on each succeeding March 15th until and including March 15, 1980 at which time full payment will have been made."

Paragraph 12 of the contract provides an escalator clause based upon the current price for "rail loaded pine pulpwood within 200 miles of Foley, Florida." The base price per cord is to be used as a base price for adjusting *future annual payments* under the contract. After an agreement to determine the price prevailing on January 1 of each year as provided in subparagraph (1) of paragraph 12, subparagraphs (2) and (3) provide:

(2) If the current prevailing price on any February 1st as determined above, is $16.50 per cord or greater than the payment of $110,000. To Huxford due March 15th of that year will be increased by an amount proportionate to $660.00 for each $0.10 increase above $16.40 base price.

(3) If the current prevailing price for any year is less than $16.50 per cord, no adjustment will be made *and the payment to Huxford on March 15 of that year will be $110,000.00 plus the other considerations set forth in this agreement.* (Emphasis added.)

Paragraph 1 of the contract evidenced an outright sale of standing timber while paragraph 3 limits the sale to standing timber in existence on the execution date of the contract.

In paragraph 6 Buckeye agrees to pay all taxes "arising from the *ownership* and *harvesting* of the timber which are assessed against the lands on or after the 1st day of January 1961 through December 31, 1980. * * *" (Emphasis added.)

Paragraph 17 provides:

(s)*hould either party be unable to perform* any of its obligations or undertakings hereunder or to obtain any of the benefits hereof, by reason of (a) war, (b) acts of the public enemy, (c) restrictions or prohibitions of the State or Federal Government or any of their respective agencies, or (d) the condemnation of title to or use of said lands or any part thereof, such party shall be relieved, to the extent and for the time only it is so prevented thereby. (Emphasis added.)

Section 631(b) of the Internal Revenue Code of 1954 provides, in part, as follows:

(b) *Disposal of Timber With a Retained Economic Interest.*—In the case of the disposal of timber held for more than 6 months before such disposal, by the owner thereof under any form or type of contract by virtue of which such owner retains an economic interest in such timber, the difference

between the amount realized from the disposal of such timber and the adjusted depletion basis thereof, shall be considered as though it were a gain or loss, as the case may be, on the sale of such timber. * * *

Whether an owner retains an economic interest in timber sold depends upon whether he must look to the actual severance of the timber and seek his return of capital "solely out of the proceeds of the natural resource itself." Dyal v. United States, 342 F.2d 248 (5th Cir. 1965); Estate of James M. Lawton v. Commissioner, 33 T.C. 47 (1959); Int. Rev.Rul. 62–81; Treas.Reg. 1.611–1(b)(1). Where payments owing under timber contracts are payable in any event, regardless of the fact of severance there is no retained economic interest.

 It is plain that under paragraph 2 of the contract Buckeye is bound to pay fixed annual sums whether the timber is severed or not. Insofar as paragraph 2 is concerned there is no retained economic interest as defined in Dyal v. United States, supra. This fact is in no way affected by the escalator clause of paragraph 12 of the contract because such amounts thereunder are payable in any event, regardless of severance of the timber. Furthermore, under subparagraph 3 the base price is payable in any event regardless of a change in economic circumstances.

 Plaintiff, however, seeks to convince this Court that the contract is to be construed as placing the "risk of loss" on the Estate thus making the proceeds "contingent upon severance." Plaintiffs' argument overlooks the fact that under the definition of a retained economic interest set forth in Dyal v. United States, supra, not only must the consideration for the transaction be contingent upon severance of the timber but it must also be payable to the owner solely out of the natural resource itself. Under the definition set forth above the contractual "risk of loss" becomes immaterial. For purposes of a retained economic interest and capital gain treatment within Section 631(b), "under any form or type of contract," one looks only to the derivation of the consideration, if any, which is actually received. See Crosby v. United States, 292 F.Supp. 314 (S.D.Miss.1968). Under this contract the character of the proceeds in the taxpayers' hands is not changed by the fact that the contractual risk of loss prior to severance may be on him. Revenue Ruling 62–81, 1962–1 Cum.Bull. 153, held that no economic interest was retained by a vendor in a timber growing and cutting arrangement where the price was subject to change upon changes in the Wholesale Commodity Price Index and subject to reduction on destruction of the timberlands. In that contract payment was not contingent upon severance of the timber and retention of title by vendor was considered merely a security device.

 Even if contractual risk of loss were a "retained economic interest" under Section 631(b), the present contract cannot be construed under Florida law as placing the risk of loss upon Huxford. In support of its argument plaintiffs look to paragraph 17 of the contract. Paragraph 17 does not place the risk of loss on either Huxford or Buckeye. Paragraph 17 involves impossibility of performance due to uncontrollable events. Under this paragraph neither party bears the risk of the four enumerated events but the contract is to be, in effect, rescinded insofar as such performance is rendered impossible as to either party.

 Plaintiffs further rely upon the case of Prescott v. J. S. Betts Co., 81 Fla. 538, 88 So. 385 (1921), to argue that this contract should be construed as granting, in effect, a mere license to Buckeye with the payment of the consideration being a condition precedent to Buckeye's right of entry and cutting which in turn is a condition precedent to the passing of the title. It is sufficient to note that the contract in Prescott bears no resemblance to the present contract. The Prescott contract made pay-

ment an *express* condition precedent to the right to enter and cut timber for one year therefore payment was a condition to the passing of any form of title. As noted in *Prescott* a contract is construed "to gather the intention [of the parties] from the entire instrument without regard to the order in which the conditions are arranged." 88 So. at 386. In the present contract, paragraph 1 purports an absolute sale of all standing timber. Paragraph 2 provides for a total purchase price which is to be paid in installments subject to the paragraph 12 escalator clause. In paragraph 6 Buckeye expressly assumes tax obligations, from the date of the contract, which arise from the *harvesting* and *ownership* of the timber. These provisions are wholly inconsistent with an interpretation affording Buckeye only a license to enter and cut.

The present contract is similar in many instances to the contract construed in Standard Lumber Co. v. Florida Industrial Co., 106 Fla. 884, 141 So. 729 (1932). In Standard Lumber the Supreme Court of Florida limited the *Prescott* case to its own particular facts and rejected the same argument that is raised here. The *Standard Lumber Co.* contract contemplated the payment of $3,690,000 as the purchase price of the timber if a cruise was not made. If a cruise was made then the *minimum* price of $3,575,000. was payable if 550,-000,000 feet or less was shown with an escalator clause for all amounts in excess of 550,000,000 feet. In any event the contract required a minimum price of $3,575,000 to be paid in installments over the length of the contract. This contract was construed as creating a vendor-vendee relationship whereby the vendor retains legal title and the vendee is regarded as beneficial owner even though he has not paid the whole purchase price.

█ It has long been the law of Florida that under binding executory contracts for the sale of land, where the purchaser is regarded as equitable owner, the purchaser must ordinarily bear any loss that occurs. Insurance Co. of North America v. Erickson, 50 Fla. 419, 39 So. 495, 2 L.R.A.,N.S., 512 (1905). In the present contract the time limitation, rather than being a condition precedent as in *Prescott* supra, is a condition subsequent which operates to divest Buckeye of title to timber remaining uncut after the term of the contract has run.

The Court concludes, therefore, that Huxford has not retained an economic interest within the meaning of Section 631(b), Internal Revenue Code of 1954.

Order in accordance with this memorandum-decision is entered this date.

## ORDER

This case came before the Court upon stipulation of the parties that there is no issue of fact. Having heard argument of counsel and having had the benefit of briefs, in accordance with its memorandum-decision filed this date, it is, upon consideration, hereby

Ordered that plaintiffs' claim for refund of taxes assessed as ordinary income, insofar as said claim is based upon Section 631(b), Internal Revenue Code of 1954, be and hereby is, denied.

Trial before a jury on such remaining issues of fact as may appear after the ruling on the above issue will be had at the nearest practicable time.

Done and ordered in Chambers at Tallahassee this 6th day of May 1969.