STEWART GAMMILL III AND LYNN C. GAMMILL, ET AL.,[1] PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1841–70, 1844–70, 6024–72.    Filed August 13, 1974.

*Paul M. Newton,* for the petitioners.
*Bernard Nelson* and *Bruce A. McArdle,* for the respondent.

DAWSON, *Judge:* Respondent determined the following deficiencies
in the petitioners' Federal income taxes:

| Petitioners | Docket No. | Year | Deficiency |
|---|---|---|---|
| Stewart Gammill III | | 1964 | $14,390.35 |
| Lynn Crosby Gammill | 1841–70 | 1965 | 28,777.25 |
| | | 1966 | 5,302.32 |
| L. O. Crosby III | | 1965 | 70,878.16 |
| Marjorie Y. Crosby | 1844–70 | 1966 | 17,309.16 |
| Stewart Gammill III | | 1967 | 19,812.07 |
| Lynn Crosby Gammill | 6024–72 | 1968 | 25,749.49 |
| | | 1969 | 18,773.47 |

At issue is whether under Rule 121, Tax Court Rules of Practice
and Procedure, respondent's motions for summary judgment should
be granted because petitioners are collaterally estopped by a prior
judgment from asserting that they realized capital gain, rather than
ordinary income, from certain timber contract proceeds they received
during the years in question.

### FINDINGS OF FACT

Most of the facts were stipulated by the parties. The stipulation of
facts and exhibits attached thereto are incorporated herein by this
reference.

Stewart Gammill III and Lynn Crosby Gammill, husband and wife,
are individuals who were legal residents of Picayune, Miss., at the
time the petition in docket No. 1841–70 was filed with this Court and
who were residents of Hattiesburg, Miss., at the time the petition in
docket No. 6024–72 was filed herein.

---

[1] Consolidated herewith are the following cases: L. O. Crosby III and Marjorie Y. Crosby,
docket No. 1844–70; Stewart Gammill III and Lynn Crosby Gammill, docket No. 6024–72.

Stewart Gammill III and Lynn C. Gammill jointly filed their Federal income tax returns for the taxable years 1965 and 1966 with the district director of internal revenue, Jackson, Miss., and for the years 1967, 1968, and 1969 with the Internal Revenue Service Center, Chamblee, Ga.

L. O. Crosby III and Marjorie Y. Crosby, husband and wife, are individuals who were legal residents of San Carlos, Calif., at the time the petition in docket No. 1844–70 was filed with this Court.

L. O. Crosby III and Marjorie Y. Crosby jointly filed their Federal income tax returns for the taxable years 1965 and 1966 with the district director of internal revenue at Jackson, Miss.

Of the amounts received by Stewart Gammill III from the sale of pulpwood (tree tops and limbs lying on the ground after the trees were felled), the amounts indicated for the taxable years below represent long-term capital gain income:

| Taxable year | Long-term capital gain income | Taxable year | Long-term capital gain income |
|---|---|---|---|
| 1966 | $1,313.36 | 1968 | $10,307.51 |
| 1967 | 3,459.22 | 1969 | 4,021.65 |

$3,243.88 received by petitioners Stewart Gammill III and Lynn Crosby Gammill in the taxable year 1969 for "timber stumpage sales" resulted in long-term capital gain income. Lynn Crosby Gammill realized long-term capital gain of $2,661.47 during the taxable year 1969 from the sale of 100 shares of stock of Firestone Tire & Rubber Co.

Effective as of July 2, 1960, Lynn Crosby Gammill, who was then Dorothy Lynn Crosby, together with L. O. Crosby, Jr., acting as trustee of the Dorothy Lynn Crosby Trust, and together with L. O. Crosby, Jr., Dorothy H. Crosby, and L. O. Crosby, Jr., as trustee of the L. O. Crosby III Trust, and St. Regis Paper Co., a New York corporation, entered into two timber purchase agreements and two leases relating to approximately 110,000 acres of land situated and located in Hancock, Pearl River, Harrison, Lamar, Forrest, Walthall, and Marion Counties, Miss., and to approximately 2,120 acres of land located and situated in St. Tammany Parish, La., together with all timber growing and to be grown thereon, which were owned by such individuals and trusts on said date, and which had been acquired by them on September 28, 1959, and owned by them for more than 6 months prior to July 2, 1960.

The timber purchase agreements and leases were for terms commencing as of July 2, 1960, and expiring on December 31, 2019.

The Dorothy Lynn Crosby Trust terminated on May 29, 1961, and upon its termination all of the property included therein was distributed to Lynn Crosby Gammill as its beneficiary. The L. O. Crosby III

Trust was terminated on June 22, 1964, and upon its termination all of the property included therein was distributed to L. O. Crosby III, as its beneficiary.

During 1965 and 1966, L. O. Crosby III and Lynn Crosby Gammill received payments in consideration for right-of-ways, easements, severance damages, and in some instances the sales of property, which resulted in gain or losses for the taxable years 1965 and 1966, in the amounts and character indicated by the following schedules:

LONG-TERM CAPITAL GAIN INCOME

| Item | Lynn Crosby Gammill | | L. O. Crosby III | |
| --- | --- | --- | --- | --- |
| | 1965 | 1966 | 1965 | 1966 |
| NASA Project | $26,337.80 | | $52,675.60 | |
| Miss. State Highway Department | 12.75 | $3,034.44 | 25.50 | $6,068.89 |
| Miss. Power Co | 232.50 | 1,415.22 | 465.00 | 2,830.44 |
| Humble Oil & Refining Co | | 1,709.10 | | 3,418.20 |

ORDINARY INCOME (LOSSES)

| Item | Lynn Crosby Gammill | | L. O. Crosby III | |
| --- | --- | --- | --- | --- |
| | 1965 | 1966 | 1965 | 1966 |
| Tennessee gas transmission | $400 | $465.20 | $800 | $930.40 |
| Cost allowance of sale deferred from 1965 | | (134.96) | | (269.92) |
| Business expense | | (1,974.17) | | |

The following amounts of gain realized by petitioners from the July 2, 1960, timber purchase agreements entered into with St. Regis Paper Co. are in controversy (petitioners contending that such amounts are long-term capital gain, and respondent contending that such amounts are ordinary income):

| Taxable year | Lynn Crosby Gammill | L. O. Crosby III |
| --- | --- | --- |
| 1964 | $44,848.00 | |
| 1965 | 44,855.04 | $89,710.90 |
| 1966 | 46,408.90 | 92,817.80 |
| 1967 | 50,577.06 | |
| 1968 | 47,381.62 | |
| 1969 | 49,903.75 | |

For the taxable years 1961, 1962, and 1963, respondent determined that payments to petitioners Lynn Crosby Gammill, L. O. Crosby III, and related parties, under the same July 2, 1960, timber purchase agreements entered into with St. Regis Paper Co. should be taxed as ordinary income rather than capital gain under section 631(b), 1221, or 1231 of the Internal Revenue Code of 1954.[2]

---

[2] All statutory references herein are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

As a result of such determinations, petitioners Lynn Crosby Gammill and L. O. Crosby III paid the tax, satisfied all jurisdictional requirements, and with their respective spouses [3] and related parties brought actions in the United States District Court of the Southern District of Mississippi, Southern Division, to recover such taxes on the basis that the amounts received from the St. Regis Paper Co. under the July 2, 1960, timber purchase agreements should be taxed as capital gain under section 631, 1221, or 1231.

The United States District Court for the Southern District of Mississippi, having consolidated the cases for trial, decided that the amounts paid Lynn Crosby Gammill, L. O. Crosby III, and related parties during their taxable years 1961, 1962, and 1963 by the St. Regis Paper Co. pursuant to the July 2, 1960, timber purchase agreements were taxable as ordinary income and were not long-term capital gains under Code section 631(b), 1221, or 1231. This unpublished decision appears at 22 A.F.T.R. 2d 5554 (1968).

The United States Court of Appeals for the Fifth Circuit affirmed the judgment of the United States District Court for the Southern District of Mississippi in *Crosby* v. *United States*, 414 F. 2d 822 (C.A. 5, 1969).

Pertinent portions of the judicial record show that the following persons were parties in those cases:

| | |
|---|---|
| L. O. CROSBY, JR. and DOROTHY H. CROSBY; | Civil Action No. 3445 |
| L. O. CROSBY III, individually, and as the sole beneficiary of the L. O. CROSBY III TRUST, and ROBERT T. MCRANEY, as co-trustee of the L. O. CROSBY III TRUST; | Civil Action No. 3449 |
| STEWART GAMMILL III and LYNN CROSBY GAMMILL; Plaintiffs, *v.* UNITED STATES OF AMERICA | Civil Action No. 3450 |

During the years here in issue petitioner Lynn Crosby Gammill was at all times married to Stewart Gammill III and was a housewife and mother and was not engaged in any other business. Except for a few isolated transactions involving land and timber which she has held for an investment, the only timber she has ever owned or sold is that which is situated and located on the lands covered by the timber purchase agreements with the St. Regis Paper Co. which are involved in this proceeding.

---

[3] Although the record is not precise, we have accepted and relied upon the stipulation of counsel that Marjorie Y. Crosby, the wife of L. O. Crosby III, was a party to the proceedings in the United States District Court for the Southern District of Mississippi. Moreover, petitioners have not alleged or argued any absence of privity between Marjorie Y. Crosby and L. O. Crosby III.

During the years here in issue petitioner L. O. Crosby III was a full-time student at various educational institutions where he engaged in undergraduate and graduate studies. He has never been engaged in the business of buying and selling timber. The only timber he has ever owned or sold is that which is the subject of this proceeding, except for an isolated timber sale for investment purposes in 1971.

OPINION

Petitioners allege that the amounts they received from the St. Regis Paper Co. pursuant to the timber purchase agreements qualify for long-term capital gains treatment since they were received as a result of the disposal of timber held for more than 6 months under a contract by which the petitioners as owners retained an economic interest in such timber, as required by section 631(b) of the Code.[4] In the alternative, they allege that these amounts qualify as long-term capital gains under either section 1221 or 1231 since the timber for which these amounts were received was a capital asset held for more than 6 months and was not stock in trade of the petitioners, nor property of a kind which would properly be included in their inventory, nor property held by them primarily for sale to customers in the ordinary course of any trade or business carried on by them.[5]

---

[4] SEC. 631(b). DISPOSAL OF TIMBER WITH A RETAINED ECONOMIC INTEREST.—In the case of the disposal of timber held for more than 6 months before such disposal, by the owner thereof under any form or type of contract by virtue of which such owner retains an economic interest in such timber, the difference between the amount realized from the disposal of such timber and the adjusted depletion basis thereof, shall be considered as though it were a gain or loss, as the case may be, on the sale of such timber. * * *

Sec. 1.611–1(b), Income Tax Regs.: *Economic interest.* * * * An economic interest is possessed in every case in which the taxpayer has acquired by investment any interest in mineral in place or standing timber and secures, by any form of legal relationship, income derived from the extraction of the mineral or severance of the timber, to which he must look for a return of his capital. * * *

[5] SEC. 1221. CAPITAL ASSET DEFINED.
For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

    (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

Sec. 1.1231–1, Income Tax Regs.: Gains and losses from the sale or exchange of certain property used in the trade or business.

(a) *In general.* Section 1231 provides that a taxpayer's gains and losses from the disposition (including involuntary conversion) of assets described in that section as "property used in the trade or business" and from the involuntary conversion of capital assets held for more than 6 months shall be treated as long-term capital gains and losses if the total gains exceed the total losses. * * *

*   *   *   *   *   *   *

(c) *Transactions to which section applies.*—Section 1231 applies to recognized gains and losses from the following:

*   *   *   *   *   *   *

(3) The cutting or disposal of timber, or the disposal of coal or iron ore, to the extent considered arising from a sale or exchange by reason of the provisions of section 631 and the regulations thereunder.

On April 12, 1974, respondent filed motions in these cases for summary judgment on the ground of collateral estoppel (estoppel by judgment). These motions were objected to by petitioners, who urge this Court to deny respondent's motions and proceed to a trial of the issues. Respondent's motions for summary judgment and petitioners' opposition thereto are the subject of this opinion.

Respondent contends that the payments received by Lynn Crosby Gammill during her taxable years 1964 through 1969 and by L. O. Crosby III during the taxable years 1965 and 1966 were paid pursuant to the same and identical July 2, 1960, timber purchase agreements and leases with St. Regis Paper Co. as those payments which were the basis of the litigation which culminated in the decision and judgment entered in *Crosby* v. *United States*, 292 F. Supp. 314 (S.D. Miss. 1968), affd. 414 F. 2d 822 (C.A. 5, 1969). He argues that all the essential facts regarding the nature of the income derived from the timber purchase agreements and leases with St. Regis Paper Co., which are the subject of the controversy before this Court, were also presented in the prior actions in the United States District Court for the Southern District of Mississippi and the United States Court of Appeals for the Fifth Circuit. That decision held that the petitioners were not entitled to long-term capital gains treatment under Code section 631(b) because neither Lynn Crosby Gammill nor L. O. Crosby III (and related parties) retained an economic interest which was contingent upon the severance of timber. It also held that petitioners were not entitled to long-term capital gains treatment under Code section 1221 or 1231 in that such timber was not a capital asset in their hands because they held it primarily for sale to customers in the ordinary course of business.

Respondent points out that there has been no change since 1961 in the applicable case law or in the timber purchase agreements affecting the determination of the character of the income in these cases, citing *Superior Pine Prod. Co.* v. *United States*, 201 Ct. Cl. 455 (1973), certiorari denied 414 U.S. 857 (1973), and *Huxford* v. *United States*, 441 F. 2d 1371 (C.A. 5, 1971). Thus, respondent asserts that petitioners are collaterally estopped from denying that the income they received for the taxable years in controversy from the St. Regis Paper Co. was other than ordinary income.

Petitioners, on the other hand, argue that, as to the application of section 631(b), the "legal atmosphere" has been changed by judicial declarations that have intervened since the decision of the United States Court of Appeals in *Crosby* v. *United States*, 414 F. 2d 822 (C.A. 5, 1969). They also argue that, as to the application of section 1221, the controlling facts of the instant cases are not identical to

those presented in the earlier cases involving the taxable years 1961, 1962, and 1963. Therefore, petitioners urge that respondent's motions for summary judgment should be denied under the holding of *Commissioner* v. *Sunnen*, 333 U.S. 591 (1948).

The guidelines for applying collateral estoppel in a tax case are clearly expounded in the landmark decision of *Commissioner* v. *Sunnen*, *supra*. Generally speaking, collateral estoppel applies to prevent repetitious suits between parties and their privies involving claims similar to issues already judicially determined by a court of competent jurisdiction if there has been no change in the applicable facts or controlling legal principles. See also *Southern Pacific Railr'd* v. *United States*, 168 U.S. 1, 48–51 (1897); *Jacques R. Milberg*, 54 T.C. 1562, 1566 (1970); Restatement, Judgments, sec. 70 (1942).

While considered an adjunct to the doctrine of res judicata, collateral estoppel is by no means the same. Res judicata applies only to the *same* cause of action arising between the same parties, but collateral estoppel applies in a *different* cause of action. *Cromwell* v. *County of Sac*, 94 U.S. 351, 352–353 (1876); *John W. Amos*, 43 T.C. 50, 53 (1964), aff'd. 360 F. 2d 358 (C.A. 4, 1965). Moreover, in the scheme of Federal revenue acts the imposition of a tax for 1 year is distinct from that for any other year and constitutes a separate claim or cause of action if it becomes the subject of litigation. *Tait* v. *Western Md. Ry. Co.*, 289 U.S. 620, 624 (1933). Each taxable year is a separate cause of action for the purpose of applying res judicata and collateral estoppel. Although a subsequent action between the same parties regarding a different taxable year or years will bar application of res judicata, it will not similarly bar application of collateral estoppel. See and compare *Thomas A. Shaheen, Jr.*, 62 T.C. 359 (1974).

Here we are confronted with earlier cases between the same petitioners and the United States which were brought to judgment in the United States District Court for the Southern District of Mississippi and affirmed by the Court of Appeals for the Fifth Circuit on facts almost identical to those now before us in these proceedings. The taxable years adjudicated in the prior proceedings were 1961, 1962, and 1963, while those before us now are the taxable years 1964 through 1969. Since different years are involved, we may apply the doctrine of collateral estoppel, mindful of the limitations with respect to possible changes in legal climate or controlling facts imposed thereon by the Supreme Court in *Commissioner* v. *Sunnen*, *supra*.

Collateral estoppel requires that a judgment be rendered earlier by a court of competent jurisdiction. There is no question that the judgment of the District Court and the affirming opinion of the Court of Appeals for the Fifth Circuit meet this requirement. In fact, the

opinion of the District Court stated in *Crosby* v. *United States*, 292 F. Supp. at 316:

The undisputed evidence in the case shows that the taxpayers paid such back assessment of taxes, applied for a refund thereof and that such refund in each instance was denied; consequently, that this Court has full jurisdiction of the parties and the subject matter of this litigation.

Collateral estoppel also requires that the prior adjudication on the merits be between the same parties or their privies and that mutuality exist as to such parties. See *United States* v. *International Building Co.*, 345 U.S. 502 (1953); *Gratiot State Bank* v. *Johnson*, 249 U.S. 246, 249 (1919).

Privity is a short-hand way of establishing that an individual is not a "stranger" to an action and is affected by a decision in such action. In *United States* v. *California Bridge Co.*, 245 U.S. 337, 341 (1917), the Supreme Court said:

The doctrine of estoppel by judgment, or *res judicata*, as a practical matter, proceeds upon the principle that one person shall not a second time litigate, *with the same person or with another so identified in interest with such person that he represents the same legal right* * * *. [Emphasis supplied.]

Privity in the sense of "identity of interests" has been broadly construed and applied. See *Tait* v. *Western Md. Ry. Co.*, *supra*, where the United States was found to have an identity of interest with the Commissioner of Internal Revenue acting in his official representative capacity, so as to create an estoppel of judgment between a taxpayer and the Commissioner based on a prior adjudication between the same taxpayer and the United States. Privity between the United States and the Commissioner of Internal Revenue is also recognized in this Court. *Thomas A. Shaheen, Jr.*, *supra*. There is an obvious "identity of interests" where all four petitioners here were also parties to the earlier proceedings. Likewise, there is the necessary "identity of interests," by privity, between the United States, a defendant in the prior proceedings, and the Commissioner of Internal Revenue, who is the respondent here.

In addition to privity, the doctrine of collateral estoppel has been held to require the presence of mutuality among the parties. Restatement, Judgments, sec. 93 (1942). In general, the doctrine of mutuality requires that one *invoking* the conclusive effect of a judgment be either a party or his privy to the suit in which the judgment was rendered. In other words, mutuality prevents one from invoking the collateral estoppel effect to bind an opposing party by a prior judgment unless he himself would also have been bound if the judgment had gone the other way. *Harold S. Divine*, 59 T.C. 152, 156 (1972), affirmed on this issue 500 F.2d 1041 (C.A. 2, 1974). 1B Moore, Federal Practice, par. 0.412[1], p. 1801 (2d ed. 1948). Respondent is

here invoking the binding effect of collateral estoppel against petitioners. However, constitutional demands of due process also require that a party *against* whom collateral estoppel is pleaded similarly be bound by the prior decision. *Blonder-Tongue* v. *University Foundation*, 402 U.S. 313, 329 (1971). Thus, it is said mutuality must exist not only as to the party invoking collateral estoppel, in this case the respondent, but also as to the parties against whom it is invoked, here the petitioners.

In recent years many courts have rejected the strict mutuality doctrine, allowing collateral estoppel to be pleaded by and against persons neither parties nor in privity with parties to a prior action. See cases and discussion in *Harold S. Divine, supra.* Recently, the Supreme Court expressed its unwillingness to uncritically accept the principle of mutuality of estoppel in patent litigation. *Blonder-Tongue* v. *University Foundation*, 402 U.S. 313, 350 (1971).[6] The Tax Court, however, has consistently adhered to the mutuality principle. *Harold S. Divine, supra; Charles M. Bernuth*, 57 T.C. 225, 233 (1971); *Walter Wilson Flora*, 47 T.C. 410, 413 (1967); *American Range Lines, Inc.*, 17 T.C. 764, 771 (1951), affirmed on this issue 200 F. 2d 844 (C.A. 2, 1952).

We note that L. O. Crosby III participated as a party to the earlier proceeding both individually and as beneficiary of a trust in his name. In 1964 the trust of L. O. Crosby III was terminated and its assets were distributed to him as its sole beneficiary. Thereafter, payments were received by him individually under the timber purchase agreements with St. Regis Paper Co. rather than as beneficiary of a trust. At the hearing on the motions for summary judgment, counsel for petitioners raised no objection that L. O. Crosby III was either a party or in privity with a party to the earlier proceedings, as would be required for correct application of collateral estoppel against him here. However, even if we assume that L. O. Crosby III was not a formal party to the earlier action because of his minority, we are nonetheless convinced that his interests were validly represented in that suit by the cotrustees representing his interests as beneficiary. L. O. Crosby III was certainly in "privity" with the trust bearing his name and the cotrustees of that trust. Moreover, we find between L. O. Crosby III and the trust bearing his name the necessary mutual and successive relationship to the same rights of property so often associated with the term "privity." *Litchfield* v. *Goodnow*, 123 U.S. 549, 551 (1887).

---

[6] In the past 35 years the rigid restrictions of the rule of mutuality have been loosened primarily by expansion of the concept of privity and numerous exceptions to the privity rule itself. See Note, "Collateral Estoppel of Nonparties," 87 Harv. L. Rev. 1485 (1974); Vestal, "Res Judicata/Preclusion: Expansion," 47 So. Cal. L. Rev. 357 (1974); Semmel, "Collateral Estoppel, Mutuality and Joinder of Parties," 68 Col. L. Rev. 1457 (1968).

The interests of L. O. Crosby III were at stake in the earlier proceedings and the judgment rendered therein bound him through his valid representatives. We are satisfied that the necessary mutuality and privity are shown to exist here, thus allowing us to apply collateral estoppel against L. O. Crosby III as a party herein.

In view of the total identity, or privity, between all the parties before us who were also bound by the earlier judgment, we think the facts of the instant cases satisfy even the most rigid application of the doctrine of mutuality.

Accordingly, we find the necessary "identity of interests" to exist as to the petitioners, Stewart Gammill III, Lynn Crosby Gammill, L. O. Crosby III, and Marjorie Y. Crosby, all of whom were parties to the earlier proceedings and are now parties in the instant proceedings.

To apply the doctrine of collateral estoppel correctly we must determine whether, as to the petitioners and the Commissioner of Internal Revenue, the facts and issues upon which the earlier judgment was rendered are applicable to the instant cases.

It is axiomatic that an earlier judgment can operate as an estoppel only as to those matters in issue or points controverted and upon which the finding or verdict in the earlier proceeding was rendered. *Cromwell* v. *County of Sac*, 94 U.S. 351 (1876) ; 1B Moore, Federal Practice, par. 0.441, p. 3777 (2d ed. 1948). Hence, collateral estoppel is not applicable to every fact which may have been determined in the first suit, or which may be in issue in a second suit. *Rex* v. *Duchess of Kingston*, 20 How. St. Tr. 355 (H.L. 1776). For an estoppel to operate and conclusively establish a "fact," determination of that fact must have been necessary and essential to the result of the first suit and it must also be an "ultimate" fact for the outcome of the second suit. An "ultimate fact" is one upon whose occurrence—or in combination with other "ultimate facts"—there arises by law the duty or right in question. See *John W. Amos*, 43 T.C. 50, 53 (1964), and the discussion therein. We must therefore look at the pleadings and the entire record before us to determine what issues and facts were essential to the earlier judgment. *United Shoe Mach. Co.* v. *United States*, 258 U.S. 451, 459 (1922).

After having examined the facts and issues of the earlier proceedings, we are persuaded that they are identical in all material respects to those present in the instant cases involving later taxable years. It is not disputed that petitioner-sellers each held their timber for more than 6 months prior to execution of their contracts. The same contracts are in issue here, namely three identical 60-year timber purchase agreements with the St. Regis Paper Co. entered into in 1960. We

are concerned with the same rights and obligations under these contracts in later taxable years. As in the earlier cases, petitioner-sellers under these contracts agreed to sell and the St. Regis Paper Co. agreed to buy all specified timber at a fixed price in a stated quantity each year during the life of the contracts. St. Regis Paper Co. is required to make quarterly payments equal to either the average growth of the timber as determined by periodic mandatory estimates or payments according to a minimum fee schedule, whichever is greater. After making these payments, St. Regis Paper Co. is then entitled to cut and remove a prescribed amount of timber. Any timber purchased but not cut becomes a "timber backlog" which St. Regis Paper Co. may cut without making further payments. All timber not cut and removed remains the property of the petitioner-sellers upon the expiration or termination of the contracts.

Significantly, the contracts do not obligate St. Regis Paper Co. to cut and remove any quantity of timber as a condition precedent to the right of the sellers to receive fixed periodic payments for fixed quantities of timber at a fixed price. In other words, the revenues derived by petitioner-sellers under these ongoing contracts are not in any way or to any extent contingent upon the severance of the timber, nor are they derived solely from the proceeds of the sales of such timber. The amounts paid are fixed and absolute and without regard to whether or not a single tree is cut or sold.

The legal rights and obligations of the petitioner-sellers and St. Regis Paper Co. under the ongoing identical contracts did not change from the years in issue in the earlier proceedings (1961, 1962, and 1963) to those years in issue before us now (1964 through 1969). These ongoing legal rights and duties were certainly "ultimate facts" found by the District Court in reaching its decision, and they are the same "ultimate facts" before us now. The record is also clear that, based upon the same "ultimate facts," two legal issues were decided in the earlier proceedings which petitioners are again raising here for later taxable years. These issues are (1) whether or not petitioner-sellers under these identical contracts retained an "economic interest" in such timber to entitle them to capital gain treatment under section 631(b), and (2) whether or not the timber could qualify as capital assets under section 1221. The record plainly shows that these issues were both carefully analyzed earlier and decided against the petitioners.

In its opinion the United States District Court for the Southern District of Mississippi noted that under section 631(b) a timber owner may treat income received from a contract to sell timber as capital gain if he retains an *economic interest* in the timber. Under section 1.611–1(b)(1), Income Tax Regs., the term "economic interest" is

defined as income derived from the severance of the timber to which the owner must look for a return of his capital.[7] Since it found facts showing the income received by petitioner-sellers under their contracts with St. Regis Paper Co. was *not* contingent upon the severance of the timber, it held that they were not entitled to capital gain treatment of this income because they did not retain the requisite "economic interest" in their timber. The alternative issue of whether the timber could be considered as capital assets was also decided against petitioner-sellers, though this was recognized by the court to be a more difficult issue for decision. As it concerned petitioners, the court called this a "very close and very troublesome issue" and found it had not been shown to its satisfaction that the timber was acquired for any purpose *other* than for sale to St. Regis Paper Co. in the ordinary course of business, thus failing to qualify for capital gain treatment under section 1221. In so holding, the court specifically recognized that the petitioner-sellers were not as active in the timber business as was their father, L. O. Crosby, Jr., and that their timber interests were handled on a much more restricted basis of activity than his.

The Court of Appeals for the Fifth Circuit affirmed the District Court in all material respects. In dealing with the section 1221 issue, however, it noted that whether an asset is held primarily for sale to customers in the ordinary course of trade or business is essentially a question of fact, to be reviewed on appeal by whether the trial court's findings were "clearly erroneous." It also noted that the petitioners had never engaged in any kind of business, but stated that a careful review of the record before it revealed that no evidence had been introduced to indicate they held their timber for investment purposes. Thus, it upheld the District Court's opinion on that issue.

It is our view that there is the requisite identity of interests, parties, facts, and legal issues between these earlier proceedings, concerning earlier taxable years, and those now before us, involving later taxable years, to warrant application of the doctrine of collateral estoppel against petitioners.

Petitioners, however, urge us not to apply the doctrine of collateral estoppel on two grounds: (1) That there has been a change in legal climate and (2) a change in controlling facts subsequent to the original suits. They stress that the Court of Appeals for the Fifth Circuit, in reaching its decision, did not make reference to the line of cases dealing with whether an "economic interest" is retained in various types of agreements involving sand and gravel, where the courts have consistently held that the presence of guaranteed minimum payments

---

[7] The District Court also relied upon language upholding this regulation found in *Dyal* v. *United States*, 342 F. 2d 248 (C.A. 5, 1965).

to the landowner does not affect his retention of an economic interest. *Wood* v. *United States*, 377 F. 2d 300 (C.A. 5, 1967), certiorari denied 389 U.S. 977 (1967); *Rutledge* v. *United States*, 428 F. 2d 347 (C.A. 5, 1970); *Hartman Tobacco Co.* v. *United States*, 471 F. 2d 1327 (C.A. 2, 1973); *Standard Oil Co. (Ind.)*, 54 T.C. 1099 (1970), affd. 465 F. 2d 246 (C.A. 7, 1972); *Ollie G. Rose*, 56 T.C. 185 (1971); *Campbell P. Ridley*, 58 T.C. 439 (1972). Likewise, while recognizing that in *Superior Pine Prod. Co.* v. *United States*, 201 Ct. Cl. 455 (1973), certiorari denied 414 U.S. 857 (1973), the Court of Claims recently held that no economic interest under section 631(b) was retained under other timber purchase agreements with St. Regis Paper Co., which contained many provisions substantially similar to those here involved, petitioners again stress that the adopted opinion of the trial commissioner contained no reference to those cases dealing with minimum guaranteed payments in sand and gravel contracts. It is therefore argued that the Court of Claims failed in its decision to recognize the growth of those legal principles which they urge us to consider now. Petitioners assert that if the receipt of guaranteed minimum payments, regardless of production, is considered in sand and gravel cases as being merely advance royalties and having no effect on the retention of an economic interest by landowners, then there is no reason for a different result to be reached in cases dealing with timber where the same type of economic interest is to be determined.

Under the limitation of *Commissioner* v. *Sunnen*, 333 U.S. 591 (1948), we realize that a judicial declaration intervening between two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable. *Edward Orton, Jr.*, 56 T.C. 147, 168 (1971). But that is not the situation here. In fact, the present legal atmosphere surrounding the issue as to whether the timber contract proceeds are entitled to capital gain treatment is identical in all respects to the legal atmosphere pertaining to this issue during the earlier proceedings. Now, as then, if an owner of timber is *not* required to look to the sale or severance of the timber for annual payments due under a timber contract, the owner will not receive capital gain treatment on such payments under section 631(b) because he has not retained the requisite "economic interest" in the timber. See sec. 631(b) and sec. 1.611–1(b), Income Tax Regs.; *Estate of James M. Lawton*, 33 T.C. 47 (1959); *Huxford* v. *United States*, 299 F. Supp. 218 (N.D. Fla. 1969), affd. 441 F. 2d 1371 (C.A. 5, 1971); *Dyal* v. *United States*, 342 F. 2d 248 (C.A. 5, 1965); *Wineberg* v. *Commissioner*, 326 F. 2d 157 (C.A. 9, 1963), affirming a Memorandum Opinion of this Court; *United States* v. *Giustina*, 313 F. 2d 710 (C.A. 9, 1962); *Superior Pine Prod. Co.* v. *United States, supra; Barclay* v. *United States*, 333 F. 2d

847 (Ct. Cl. 1964) ; 3B Mertens, Law of Federal Income Taxation, sec. 22.128, pp. 875–876 (1973).

Petitioners' reference to cases dealing with "economic interests" in sand and gravel cases ignores the overwhelming consistency courts have reached in cases dealing exclusively with timber contract rights noted above. We see no reason to depart from this continuous, unchanging pattern of judicial precedent in the timber contract area simply because petitioners ask us to do so. Accordingly, we hold that there has not been the requisite change in legal atmosphere envisioned by the Supreme Court in *Commissioner* v. *Sunnen, supra,* so as to support the requested denial of respondent's motions for summary judgment.

Finally, petitioners contend that under the holding in *Commissioner* v. *Sunnen, supra,* the application of collateral estoppel must be confined to those cases where, among other things, the controlling facts remain unchanged. They argue that in cases involving the factual question of whether property is held for sale to customers in the ordinary course of trade or business, courts have consistently held that each year is a different taxable period, and if facts change from year to year, a new determination is ordinarily required, citing *Jackson* v. *King,* 223 F. 2d 714 (C.A. 5, 1955), and *Real Estate Corporation,* T.C. Memo. 1963–138. Petitioners point to the facts we have found earlier, namely, that Lynn Crosby Gammill has been a housewife since her marriage in 1960 while her brother L. O. Crosby III has been a student since 1960, urging that they have probative value which could result upon development at trial in a holding by this Court that the timber they held during the years in issue was not held by them primarily for sale to customers in the ordinary course of business. Petitioners point out that on the section 1221 issue the Fifth Circuit opinion found that they held that timber for sale to customers in the ordinary course of business primarily by attributing to them the motive, purpose, and intent of L. O. Crosby, Jr., who is the father of Lynn Crosby Gammill and L. O. Crosby III.

We observe first that the fact that a prior judgment may appear incorrect to petitioners, or to anyone else, will not bar its collateral estoppel effect on a subsequent proceeding. *Partmar Corp.* v. *Paramount Corp.,* 347 U.S. 89, 103 fn. 9 (1954). If an issue was determined in an earlier action, it is binding later notwithstanding that the parties might have omitted matters which, if urged, might have produced a contrary result. *George A. Dean,* 56 T.C. 895, 900 (1971) ; *Jacques R. Milberg,* 54 T.C. 1562 (1970). Our reasoning in *Jacques R. Milberg, supra,* applies equally well to the instant cases:

We need not speculate as to why the agreement was not offered as evidence in the prior case, but since it was not petitioners cannot now "have a question

considered on its merits a second time merely because they failed to produce all the facts the first time." * * * [p. 1566.]

Likewise, we will not speculate why petitioners present for the first time to this Court evidence that their timber was held by them for investment purposes, when they failed to do so in the earlier proceedings. Petitioners are in effect requesting a new trial here on the ground that they can now present evidence which was clearly available for presentation by them earlier. See *George A. Dean, supra.* Their failure to present such evidence was the consequence of their own oversight, not unnoticed by both the District Court and the Court of Appeals for the Fifth Circuit in their opinions. The overall purpose of collateral estoppel is to preclude the repeated controversy over matters already judicially determined. We would defeat that purpose by reopening the already settled controversy here. It is clear that the "ultimate facts" concerning the holding of timber for sale to customers were one basis for the earlier judgment rendered against petitioners. Nor are we persuaded that it can be shown that these "ultimate facts" were any different during the later taxable years now before us. Dorothy Lynn Crosby was a housewife during the years 1961 through 1963; she was still a housewife during the years 1964 through 1969. Her brother, L. O. Crosby III, was a student during both the earlier and later taxable years. We cannot see how any facts have changed, and certainly no controlling facts have changed. Thus, we do not find the requisite change in facts to support the requested denial of respondent's motions for summary judgment.

Therefore, we conclude that the petitioners are collaterally estopped by the prior judgment of the United States District Court for the Southern District of Mississippi, as affirmed by the Court of Appeals for the Fifth Circuit, to deny that the income they received from the same timber purchase contracts was ordinary income in the years 1964 through 1969, rather than capital gain under either section 631(b) or 1221. Accordingly, respondent's motions for summary judgment will be granted.

*Appropriate orders and decisions will be entered.*