ARTHUR B. HAYUTIN and DORIS M. HAYUTIN, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Hayutin v. Comm'r
Docket Nos. 11377-77; 11678-77; 1239-78. United States Tax Court
T.C. Memo 1979-445; 1979 Tax Ct. Memo LEXIS 77; 39 T.C.M. (CCH) 449; T.C.M. (RIA) 79445; November 8, 1979, Filed Stanley L. Drexler and Chester J. Stern, for the petitioners in docket No. 11377-77. Martin P. Miller, for the petitioners in docket No. 11678-77. Arthur B. Hayutin, pro se in docket No. 1239-78. Richard D. D'Estrada, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: Docket
Petitioners
No.
Year
Deficiency
Arthur B. Hayutin
11377-77
1964
$ 3,156.49
and Doris M.
1965
370.71
Hayutin
1966
2,493.86
1967
4,632.54
1968
3,054.51
1969
22,874.11
Arthur B. Hayutin
1239-78
1971
4,369.00
and Doris M.
1972
8,023.00
Hayutin
1974
3,517.00
1975
474.00
Harold H. Harrison
11678-77
1963
849.75
and Sylvia C.
1964
1,089.67
Harrison
1965
876.77
1966
1,112.56
1967
1,458.90
1968
1,603.45
1969
1,696.04
1970
1,399.71
*78 Concessions having been made, the sole issue remaining for decision is whether amounts paid by petitioner Arthur B. Hayutin to his former wife, petitioner Sylvia C. Harrison, are deductible by him under section 215 [2] and includable in her income under section 71. [3] All three dockets were consolidated on the record during the trial session at which the cases were calendared for trial. These cases were submitted as fully stipulated. [4] The stipulations of facts, together with the exhibits attached thereto, are incorporated herein by this reference and the facts set forth therein are found accordingly. *79 Petitioners Arthur B. Hayutin and Doris M. Hayutin, husband and wife, resided in Denver, Colo., at the time of filing their petitioners herein. They filed joint Federal income tax returns with the Internal Revenue Service for the years at issue. Petitioners Harold H. Harrison and Sylvia C. Harrison, husband and wife, resided in Canyon Creek, Mont., at the time of filing their petition herein. They filed joint Federal income tax returns with the Internal Revenue Service for the years at issue. Arthur B. Hayutin (Arthur) and Sylvia C. Harrison (Sylvia), formerly Sylvia C. Hayutin, were divorced on October 10, 1961. *80 Two children were born of their marriage: Robyn D. Hayutin on September 30, 1948, and Marjorie Ellen Hayutin on December 9, 1950. Robyn attended college at the University of Wisconsin from September 1966 until June 1970. Marjorie attended Colorado State University from September 1969 through June 1973. The divorce decree ordered Arthur to pay Sylvia for temporary alimony and support the sum of $500 per month as well as complete payment of the encumbrance, taxes, and insurance on the house located at 6707 East Fifth Avenue, Denver, Colo., until further order of the Court. The decree also provided for a later hearing on division of property, permanent alimony, support money, costs, and attorneys' fees. Subsequently, on May 7, 1962, Arthur and Sylvia entered into a Stipulation and Agreement (the agreement) in full and complete settlement of all claims and demands against each other arising out of their marriage. The agreement awarded the permanent care, custody, and control of the minor children to Sylvia and provided that Arthur was to have reasonable visitation privileges. In settlement of all claims and demands, Arthur agreed to pay Sylvia a lump sum of $198,000, consisting *81 of property with an agreed value of $35,000 and monthly payments, as follows: Property valued at $35,000
1. Equity in property located at 6707 East 5th Ave., Denver, Colo., subject to current taxes and first trust deed with an unpaid balance of $9,098.67. 2. Note dated September 12, 1959, from Benjamin L. Kohen to S and H Builders, Inc., in the face amount of $5,000. 3. Arthur's right, title, and interest in and to furniture, appliances, silverware, photographic equipment, linens, and household miscellany in Sylvia's possession. Arthur's right, title, and interest in and to Rambler station wagon. Monthly payments of the balance of
$163,000 (all dates are inclusive)
June 1, 1962 - May 1, 1963 $700
June 1, 1963 - May 1, 1964
750
June 1, 1964 - May 1, 1965
800
June 1, 1965 - May 1, 1966
850
June 1, 1966 - May 1, 1967
900
May 1, 1967 - May 1, 1969
(2 years)
950
June 1, 1969 - May 1, 1970
1,000
June 1, 1970 - May 1, 1973
(3 years)
900
June 1, 1973 - May 1, 1974
750
June 1, 1974 - Oct. 1, 1980
(6 years
and
5 months)
500
Nov. 1, 1980 (final payment)
300
In addition, Arthur agreed to pay the interest due on the encumbrance *82 on the property at 6707 East 5th Avenue and Sylvia's attorneys' fees, appraisal fees, and financial consultant fees in the amount of $6,020. Sylvia agreed to assume full responsibility for the support of the children. She also transferred property which was not valued in the agreement as follows: 1. Deed to property located at Jupiter Lane, Denver, Colo, subject to taxes, the encumbrance of record to Guaranty Bank and Trust Co., and any encumbrance placed thereon by Arthur. 2. Assignment and instructions to the trustee of the Sylvia C. Hayutin Trust to (1) deliver any stock of S and H Builders, Inc., to Arthur at any time said stock was withdrawn or distributed in accordance with the terms of said trust and (2) pay to Arthur any income accruing from said trust, to be credited against monthly payments to Sylvia under the agreement, with any excess to be paid to Arthur. [5]
3. Sylvia's right, title, and interest in and to the furniture, appliances, silverware, guns, tools, linens, and *83 household miscellany in Arthur's possession.
The agreement specifically provided that the obligations of the parties pursuant thereto would not in any way be affected by the remarriage of either of the parties, changes in income, property ownership of the parties, or by the marriage, death, incapacity, or emancipation of the children of the parties. At a hearing on the agreement before the Colorado court which granted the divorce, and at the conclusion of the hearing approved the agreement, the following testimony was adduced by the court: THE COURT: * * * Paragraph 2 [of the agreement] provides for the maintenance of the minor children, which is to be taken care of by the paintiff [Sylvia] with funds furnished by the defendant [Arthur]. Now, does this include education of the children beyond the public school or beyond the age of their majority? Or have you discussed that? THE DEFENDANT [ARTHUR]: Yes, that was one of the reasons for the gradual increase of the monthly payments and then the reduction at the time the reduction does occur.It was set out to conform to their ages as they reach college and then complete it. THE COURT: Is that your understanding? *84 MR. HARRISON [COUNSEL FOR SYLVIA]: That is correct * * * * * *
THE COURT: Then there is no claim to be made against the defendant [Arthur] for such educational needs as I have indicated? THE DEFENDANT [ARTHUR]: I would say that is a question to be asked Mrs. Hayutin. THE COURT: There is to be no claim made against Mr. Hayutin for any educational funds for the children when they are going to college, or whatever their schooling may be? That is taken care of in the agreement? THE PLAINTIFF [SYLVIA]: That is my understanding. Pursuant to the agreement, Arthur made payments to Sylvia in the following amounts: [6]
1963
$ 8,750
1964
10,150
1965
10,000
1966
9,700
1967
11,150
1968
11,400
1969
11,750
1970
11,300
1972
10,800
1974
7,250
The issue is the extent to which payments *85 made by Arthur to Sylvia constitute alimony, deductible by Arthur under section 215 and taxable to Sylvia under section 71. The parties agree that any amount which was intended to provide support for Sylvia and the children constitutes alimony for purposes of sections 71 and 215 [7] and that any amount which was intended as payment with respect to a division of property is not deductible by or taxable to either party.Thus, the issue is the factual one of how much of each payment was intended to be payment with respect to a property settlement. In Hayutin v. Commissioner,T.C. Memo. 1972-127, affd. 508 F.2d 462 (10th Cir. 1974), the same issue was litigated with respect to payments made by Arthur to Sylivia in 1962. In that year, Arthur had made seven $700 monthly payments and we held that $500 of each payment was paid for Sylvia's support and $200 of each payment was paid to acquire Sylvia's interest in property. Petitioners *86 Harrison contend that the prior litigation resolved the issue herein and that, under the doctrine of collateral estoppe, respondent may not relitigate the issue, with the result that only $500 per month represents support income taxable to Sylvia. Petitioners Hayutin argue that, because new years and new amounts are at issue, the doctrine of collateral estoppel is totally inapplicable to the question of how the payments are to be allocated. Respondent takes the position that it is immaterial to him how the payments involved herein are allocated, although he expresses the view that the increased payments over the amounts involved in 1962 are attributable to support and that the doctrine of collateral estoppel applies only to the proposition that for the years at issue at least $500 per month represented alimony and at least $200 per month represented a division of property. None of the parties dispute the underlying issues of fct as determined in the prior proceeding or raise any question regarding the application of the doctrine of collateral estoppel to such prior determination. The dispute herein, therefore, has a narrow focus, namely, (1) whether, and to what extent, the allocation *87 of the payments by Arthur during the years at issue between support for Sylvia and the children and payments for acquisition by Arthur of rights in property from Sylvia is controlled by the prior proceeding through the application of the aforementioned doctrine and (2) if not, what should the allocation be? Since different years are involved, the doctrine of res adjudicata is not applicable herein. Commissioner v. Sunnen,333 U.S. 591, 597 (1948); Fairmont Aluminum Co. v. Commissioner,22 T.C. 1377, 1381 (1954), affd. 222 F.2d 622, 625 (4th Cir. 1955). Collateral estoppel, however, does apply in subsequent proceedings with respect to matters which were actually litigated and determined in a prior proceeding between the parties. Commissioner v Sunnen,333 U.S. at 598; Fairmont Aluminum Co. v. Commissioner,22 T.C. at 1381-1382 and 222 F.2d at 625-626. But see Starker v. United States,602 F.2d 1341 (9th Cir. 1979), which suggests that the Supreme Court has recently narrowed the scope of Sunnen. It is confined, however, to situatiions where the matter raised in the *88 second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. Commissioner v. Sunnen,supra at 599-600. Here, the controlling facts are not unchanged because the amount of Arthur's monthly payments increased in the years subsequent to 1962. Thus, it is clear that litigation with respect to the years at issue herein is not barred by the doctrine of collateral estoppel.[8] The cases upon which petitioners Harrison rely are distinguishable. In Jones v. United States,466 F.2d 131 (10th Cir. 1972), neither the terms of the contract nor the relevant facts were different in subsequent years. In Adolph Coors Company v. Commissioner,519 F.2d 1280 (10th Cir. 1975), affg. sub nom. Coors v. Commissioner,60 T.C. 368 (1973), the doctrine of collateral estoppel was inapplicable because no judicial determination had been made in the first proceeding with respect to the question at issue in the second proceeding. See 519 F.2d at 1283 and 60 T.C. at 389-392. *89 On the other hand, while our decision with respect to the payments made in 1962 is not conclusive as to the taxation of payments made in subsequent years, it is a factor that may be taken into consideration. See Koch v. United States,457 F.2d 230, 235-236 (7th Cir. 1972); Thompson v. Commissioner,38 T.C. 153, 163-165 (1962), affirmed as to this issue 322 F.2d 122 (5th Cir. 1963), and particularly 322 F.2d at 124, n.3. With this background, we turn to the question of the extent to which the payments made by Arthur to Sylvia are deductible by him and taxable to her under sections 215 and 71. Petitioners Harrison, relying exclusively on the doctrine of collateral estoppel, contend that only $500 of each monthly payment is includable in Sylvia's income and have not even dealt with the fact that the amount of the payments increased after 1962. Petitioners Hayutin make several arguments to support their contention that the entire amount of each payment made subsequent to 1962 was for support. First, petitioners Hayutin argue that our prior decision held only that $200 of each payment made in 1962 (a total of $1,400) *90 was for the property settlement and that there is no evidence that any amount paid in subsequent years was for such settlement. When the parties litigated this issue with respect to payments made in 1962, they and the Court were unable to determine the value of the properties transferred to Arthur by Sylvia. The Court did, however, determine from the record that $500 of each monthly payment was intended to be payment for support and deduced from that fact that the balance of $200 of each monthly payment was intended to be paid with respect to the division of property. Years subsequent to 1962 were not before the Court and, thus, the Court made no decision with respect to them. However, in light of the manner in which the Court determined the $200 figure, we think it is a fair inference that the Court had in mind that a part of each payment over the entire period of payments was intended to be made with respect to the property settlement. The fact that the Court clearly did not determine that the value of the property acquired from Sylvia was $1,400 strengthens this inference. Indeed, we think that it can reasonably be inferred from ourprior decision that, despite the absence *91 of a determination of the dollar amount involved, the value of the property acquired by Arthur from Sylvia exceeded the value of the property transferred by him to her by considerably more than the relatively insignificant amount of $1,400 allocated thereto in the prior proceeding. In this connection, we note that the issue of excess value was in fact involved in the prir proceeding and that it is apparent that some evidence on this issue, albeit inconclusive, was presented therein. We also again note (see footnote 4, supra) that petitioners Hayutin have taken the position that the record herein, as it stands, is sufficient to enable us to resolve the disputed issue and rely upon the assertion that "[there] has been no showing that the amounts paid by Arthur to Sylvia in 1962 were anything but full and fair consideration for any property which Sylvia transferred to him." [9] Petitioners Harrison likeiwse make no reference to the need for any additional evidence. Under these circumstances, although we are satisfied that collateral estoppel as such does not apply (cf. Fox v. Commissioner,61 T.C. 704, 711 (1974)), we are not disposed to reopen the record in order *92 to take evidence of the value of property as of a point in time more than seventeen years ago and thereby prolong what has already been unduly protracted litigation among the parties. [10]
*93 Second, petitioners Hayutin argue that the Court erred in concluding in the prior decision that only $500 of each payment was intended to be for support. The Court, in making its determination with respect to 1962, relied on the amount of temporary payments under the divorce decree as evidence of what Arthur and Sylvia considered necessary for Sylvia's support. Petitioners Hayutin point out, however, that the Court made reference only to the fact that Arthur was to pay Sylvia $500 per month as temporary alimony and failed to take into account that the divorce decree also required him temporarily to pay the mortgage, taxes, and insurance on the house. The parties' agreement, which superseded the divorce decree, only specified that he make interest payments on the mortgage and made no reference to other payments with respect to the house. Petitioners Hayutin argue that Arthur was actually paying more than $500 per month for support under the divorce decree and that, therefore, more than $500 of each monthly payment under the agreement should be allocated to support. Petitioners Hayutin, however, have failed to produce evidence as to the amount of such payments and, thus, even *94 if we were to accept their argument, we have no basis in the record upon which to determine another amount. [11]
Third and lastly, petitioners Hayutin argue that the testimony from the hearing before the divorce court on the agreement clearly shows at the very least that both Arthur and Sylvia believed that the increases in the amount of payments were intended to be for support, in that they were calculated to coincide with the children's growth and college education, and the payments declined as the children finished college. The record establishes that Robyn attended college from September 1966 until June 1970, that Marjorie attended college from September 1969 through June 1973, and that the largest monthly payments under the agreement were required from June *95 1969 to May 1970, the year that both children were in college. In contrast, there is no evidence that the increase in payments was related to the property settlement.Accordingly, we think that this portion of the argument of petitioners Hayutin has considerable merit. On the record before us and in light of the positions taken by the parties with respect to the sufficiency of that record, we conclude that, out of each monthly payment, $200 was allocable to the parties' property settlement and the balance was allocable to support. All monthly payments in excess of $200 were paid for support and are deductible by Arthur under section 215 and taxable to Sylvia under section 71. Decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith. Harold H. Harrison and Sylvia C. Harrison, docket No. 11678-77; Arthur B. Hayutin and Doris M. Hayutin, docket No. 1239-78.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue. ↩
3. This issue is involved for every year for which a deficiency was determined except the years 1971 and 1975 in docket No. 1239-78; in addition, the petition in that docket raised no issue as to the 1975 taxable year. The petition in docket No. 11377-77 did not place the years 1964 and 1966 in dispute, and the record indicates that those years will be disposed of by the parties in a manner to be determined by them.↩
4. Although there is an indication in the record that additional evidence might be necessary, depending upon the disposition of these cases, with the right reserved to the parties to argue the need for such evidence on brief, none of the parties have so argued. Petitioners in docket No. 11377-77 and 1239-78 urge on brief "that there are sufficient facts in the record * * * to mandate a finding" in their favor on the issue involved. Neither petitioners in docket No. 11678-77 nor respondent make any reference whatsoever on brief to the need for additional evidence.↩
5. The terms of the trust are not part of the record. See, however, Hayutin v. Commissioner,T.C. Memo. 1972-127, affd. 508 F.2d 462↩ (10th Cir. 1974).
6. There are discrepancies between the amounts listed, the amounts required to be paid in each year under the agreement, and the amounts claimed as deductions in the tax returns of petitioners Hayutin. However, in light of the fact that the parties have stipulated the above schedule of payments, we find it unnecessary to resolve these discrepancies.↩
7. The agreement did not specify an amount for child support and, thus, the entire amount allocable to support is taxable to Sylvia. See section 71(b); Commissioner v. Lester,366 U.S. 299, 302↩ (1961).
8. In the context of this case, we find it unnecessary to delve into the intricacies of the distinction between mediate facts and ultimate facts. See Chabot, J., dissenting in Goodwin v. Commissioner,↩ 73 T.C.     (Oct. 31, 1979), and the cases collected in the various opinions therein.
9. Petitioners Hayutin overlook the fact that the burden of proof as to the factual issue involved herein is upon them. Rule 142(a), Tax Court Rules of Practice and procedure.↩
10. We recognize, of course, that, just as our decision in the prior proceeding is not binding upon the parties in this proceeding, neither decision will be binding for the taxable years which are still open but are not involved herein. We are constrained to suggest, however, that our analysis herein has considerable applicability to those years. Additionally, we note that, since the value of the property transferred by Sylvia to Arthur was inextricably involved in the prior proceeding, the failure of the parties to produce all available evidence in that proceeding is, at the very least, an element which should be taken into account in exercising our discretion to reopen the record. Cf. Jones v. United States,466 F.2d 131, 136 (10th Cir. 1972); Gammill v. Commissioner,62 T.C. 607, 621↩ (1974).
11. There is evidence in the record of the amount of interest payable on the mortgage for a few months in 1963 but there is no evidence that Arthur actually made such payments.In any event, the interest payments were made in addition to the monthly payments made under the divorce decree and the agreement and are, therefore, not relevant to the question of what portion of the monthly payments was intended as support.↩